# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**JUDITH D. LOPEZ**,

       Plaintiff,

     v.

**COMMISSIONER OF THE SOCIAL SECURITYADMINISTRATION**,

       Defendant.

3:15-cv-00406-YY

**OPINION AND ORDER**

**YOU**, Magistrate Judge:

## INTRODUCTION

Plaintiff, Judith D. Lopez ("Lopez"), seeks to reverse and remand the final decision of the Social Security Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 USC §§ 401-433, and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 USC §§ 1381-1383f.  This court has jurisdiction to review the Commissioner's decision pursuant to 42 USC § 405(g) and § 1383(c)(3).  All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket #10).  Because the Commissioner's decision is not supported by substantial evidence, it is REVERSED AND REMANDED for an immediate award of benefits.

1 – OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Lopez protectively filed[1] for DIB and SSI on May 26, 2011, alleging a disability onset date of October 1, 2007.  Tr. 16, 196–211.[2]  Her applications were denied initially and on reconsideration.  Tr. 120-138.  On June 25, 2013, a hearing was held before Administrative Law Judge ("ALJ") Ruperta M. Alexis.  Tr. 34-65.  The ALJ issued a decision on August 28 2013, finding Lopez not disabled.  Tr. 16-28.  The Appeals Council denied a request for review on January 16, 2015.  Tr. 1-6.  Therefore, the ALJ's decision is the Commissioner's final decision subject to review by this court.  20 CFR §§ 404.981, 416.1481, 422.210.

## BACKGROUND

Born in 1984, Lopez was 28 at the time of the hearing before the ALJ.  Tr. 196.  She has a ninth-grade education and past work experience as a fast food worker and a hand packager.  Tr. 26, 38.  Lopez alleges that she is unable to work due to the combined impairments of a learning disability, bipolar disorder, depression, and attentive deficit disorder (ADHD).  Tr. 77.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 USC § 423(d)(1)(A).  The ALJ engages in a five-step sequential

---

[1] It appears that Lopez initially applied for benefits on October 25, 2010 (Tr. 66-76, 88, 90), and on June 7, 2011.  Tr. 77-87, 89, 91.  The only record of the protective filing date appears in the ALJ's written opinion.  Tr. 16.
[2]  Citations are to the page(s) indicated in the official transcript of the record filed on July 17, 2015 (docket #13).

inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii) & (c), 416.909, 416.920(a)(4)(ii) & (c). Absent a severe impairment, the claimant is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR § § 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d); 20 CFR Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments. 20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 CFR §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e). If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the

claimant can perform other work in the national economy.  20 CFR §§ 404.1520(a)(4)(v) &

(g), 416.920(a)(4)(v) & (g); *Bowen v. Yuckert*, 482 US 137, 142 (1987); *Tackett*, 180 F3d at

1099.

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180

F3d at 1098.  If the process reaches step five, the burden shifts to the Commissioner to show

that jobs exist in the national economy within the claimant's RFC.  *Id*.  If the Commissioner

meets this burden, then the claimant is not disabled.  20 CFR §§ 404.1520(a)(4)(v) & (g),

416.920(a)(4)(v) & (g), 416.960(c).

## ALJ'S FINDINGS

The ALJ determined that Lopez met the insured status requirements of the Act

through June 30, 2013.  Tr. 18.

At step one, the ALJ concluded that Lopez has not engaged in substantial gainful

activity since October 7, 2011, the date of the alleged onset.  *Id*.

At step two, the ALJ determined that Lopez has the severe impairments of ADHD,

anxiety disorder, and personality disorder.  Tr. 19.

At step three, the ALJ concluded that Lopez does not have an impairment or

combination of impairments that meets or equals any of the listed impairments.  *Id*.  The

ALJ found that Lopez has the RFC to perform a full range of work at all exertional levels

but with the following nonexertional limitations: "she is limited to performing short, simple,

routine instructions; works best in a small work environment; should not have any co-

worker interaction, but she "can perform her own work independently" and "can accept

instructions and/or directions from supervisors."  Tr. 21.

Based upon the testimony of a vocational expert ("VE"), the ALJ determined at step four that Lopez has no past relevant work.  Tr. 26.

At step five, the ALJ found that considering Lopez's age, education, and RFC, she was capable of performing the requirements of representative occupations such as window cleaner and kitchen helper.  Tr. 26-27.

Accordingly, the ALJ determined that Lopez was not disabled at any time through the date of the decision.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 USC § 405(g); *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F3d 1194, 1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir 2007); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'"  *Tommasetti v. Astrue*, 533 F3d 1035, 1038 (9th Cir 2008), *quoting Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004); *see also Lingenfelter*, 504 F3d at 1035.

## DISCUSSION

Lopez argues that the ALJ erred in several respects by: (1) not listing depression as a severe impairment; (2) not properly considering portions of the opinions and conclusions of her treating physician, Elizabeth J. Blount, M.D., and examining doctors, Paul S. Stoltzfus, Psy.D., and Joel Suckow, M.D.; (3) rejecting her subjective symptom testimony without stating clear and convincing reasons; and (4) omitting functional limitations from the RFC and hypothetical questions posed to the VE.

## I.    Medical Opinions

If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995). The ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Orn v. Astrue*, 495 F3d 625, 632 (9th Cir 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id* (treating physician); *Widmark v. Barnhart*, 454 F3d 1063, 1067 (9th Cir 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F3d at 632; *Widmark*, 454 F3d at 1066. An ALJ may not substitute his opinion for that of a physician. *Day v. Weinberger*, 522 F2d 1154, 1156 (9th Cir 1975); *see also Schmidt v. Sullivan*, 914 F2d 117, 118 (7th Cir 1990) (citation omitted), *cert. denied*, 502 US 901 (1991) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the

temptation to play doctor.  The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them.").

> A.    **Dr. Blount (Treating Physician)**

Dr. Blount has been Lopez's family physician since 2002.  Tr. 751, 766.  She provided obstetrical care during three of Lopez's six pregnancies and treated Lopez's mother for lung cancer and her sister during and after pregnancy.  Tr. 766.

In letters dated January 31, 2012 and May 25, 2012, Dr. Blount summarized her opinion about Lopez's ability to work:

> [Lopez] had a communication disorder her whole life.  This is particularly with regards to receptive problems for verbal and written information which makes learning on the job difficult for her.  She has functioned rather marginally in the entire 10 years that I have known her.  Holding down the basic kind of jobs, such as fast food restaurant work, has been difficult for her.  . . . . Treatment with ADHD medication such as Adderall helps and she does somewhat better with organization and focus on the job, but not sufficient to enable her to keep a job.  Her most recent job loss was another fast food restaurant and her boss told her she was too slow and kept making mistakes. . . . I do not feel that [Lopez] has the emotional stability to support herself through employment . . . due to ADHD, chronic depression, emotional instability, and marginal intellectual functioning.  I have not seen any improvement in this situation over ten years of caring for her as her physician and do not anticipate there will be in the future.

Tr. 753-54, 766-67.

Dr. Blount also completed a Functional Assessment Form (FAF), in which she concluded that Lopez was more than moderately restricted in several areas of mental functioning.  She found that Lopez is severely limited in her ability to understand and remember detailed instructions, and "complete a normal work week without interruptions from psychologically based symptoms."  Tr. 890.  She also found that Lopez had moderately severe limitations in the following areas:  the ability to carry out detailed

instructions, maintain attention and concentration for extended periods of time, perform

activities with a schedule and/or maintain regular attendance and/or be punctual within

customary tolerances, complete a normal work day without interruptions from

psychologically-based symptoms, accept instructions and respond appropriately to criticism

from supervisors, get along with coworkers or peers without distracting them or exhibiting

behavioral extremes, maintain socially appropriate behavior and/or adhere to basic standards

of neatness and cleanliness, and respond appropriately to changes in the work setting.

Tr. 890-91.  At the end of the FAC, Dr. Blount summarized:

> [Lopez] has an unfortunate combination of severe diagnoses and
> pediatric issues that have resulted in a very unstable mood with severe
> depression her most pervasive problem.  She also has anger
> management issues, ADHD, and impaired intellectual functioning.  I
> have seen her try and fail several times to maintain even the most
> basic, simple employments such as fast food jobs, due to difficulty
> learning basic procedures.

Tr. 891.

The ALJ's decision lacks specific and legitimate reasons for rejecting Dr. Blount's

opinions on Lopez's level of functioning.[3]  The ALJ gave "little weight" to Dr. Blount's

opinion that Lopez has "marked mental health limitations and is disabled."  Tr. 25.[4]  As her

reason for reaching this conclusion, the ALJ cited an inconsistency between Dr. Blount's

previous opinion contained in a 2011 letter to the Oregon Department of Human Services

("DHS") and the "longitudinal record."  Tr. 25-26.

---

[3] The "specific and legitimate" standard is applicable here because Dr. Blount's assessment of Lopez's functionality is contradicted by reviewing physician Megan D. Nicoloff, Psy.D.  *Orn*, 495 F3d at 632; Tr. 66-85.

[4] The Social Security Administration uses a five-point scale when rating the degree of limitation in activities of daily living; social functioning; and concentration, persistence, pace.  42 USC 416.920a(c)(4).  The scale includes the following levels:  none, mild, moderate, marked, and extreme.  *Id.*  This scale is different than that used on the FAF like the one completed by Dr. Blount.  The FAF gives the following levels as options: none, mild, moderate, moderately severe, and severe.  Tr. 890-91.

8 – OPINION AND ORDER

In Dr. Blount's January 18, 2011 letter to DHS, Dr. Blount wrote in support of Lopez who was under DHS observation regarding her care of her youngest son.  Tr. 751.  Lopez's two eldest sons had been in foster care since April 2007 after the younger child had sustained a brain injury from Lopez's boyfriend.  Tr. 343.  Her first psychological evaluation required by DHS was unfavorable in terms of her ability to parent due to cognitive and psychiatric limitations.  *Id.*  Dr. Blount opined that Lopez had shown improvement in her judgment regarding childcare and parenting issues and provided the baby a safe and loving environment.  *Id.*  To reinforce this opinion, Dr. Blount explained that Lopez was on medication for bipolar disease and ADHD, and her mental health was the most stable that Dr. Blount had observed since treating her.  *Id.*  The letter also mentioned that Lopez was employed and balancing her baby's needs and employment adequately.  *Id.*

The Commissioner argues that Dr. Blount's 2011 letter contradicts her current opinion that Lopez has moderately severe to severe mental limitations that would limit her ability to balance work and caring for a child.  While this evidence is certainly relevant to Lopez's mental functioning, the opinions in this letter do not create inconsistent views with her later functional assessment.  In the 2011 letter, Dr. Blount provided her medical opinion relative to Lopez's ability to provide a stable and loving environment for her child, which is a different standard entirely from that required for competitive employment.  The concerns over Lopez's ability to care for her youngest son stemmed from past incidents of domestic violence including life-threatening injuries sustained by one of her other children at the hands of a former boyfriend.  Tr. 359.  DHS required medical opinions to determine whether Lopez "has mental health difficulties that prevented her from protecting or caring for her

children." Tr. 347. Dr. Blount's letter was submitted in support of Lopez's case that she

was a rehabilitated parent. Tr. 359.

In stark contrast, the FAF specifically directs the medical provider to evaluate the

claimant's "capacity to sustain each mental activity over normal work day and work week,

on an ongoing basis." Tr. 890. In 2011, Lopez was employed at a meat packing company

and Dairy Queen, which ended shortly after Dr. Blount wrote her letter (Tr. 311) and never

qualified as substantial gainful activity. Tr. 26. She never made more than $528.99 a

month and only worked 6 hours a day. Tr. 26, 312. Dr. Blount's letter to DHS does not

contradict her opinion about Lopez's capacity for work and does not qualify as a specific

and rational reason for rejecting Dr. Blount's opinion about her mental health limitations.

As for the ALJ's second reason, inconsistency with the "longitudinal record," it is

not clear what evidence the ALJ finds contradictory. The Commissioner argues that the

ALJ was referring to evidence discussed earlier in the opinion, specifically the opinion of B.

Scot Cook, PsyD, PC in April 2010 that Lopez had only mild limitations and a GAF[5] score

of 61 and that of Dr. Kallemeyn in May 2006 that Lopez had only moderate restrictions and

a GAF score of 55. Tr. 25.

However, the GAF scoring rubric has been deemed unreliable by the American

Psychiatric Association and were dropped from the most recent edition of the Diagnostic

and Statistical Manual of Mental Disorders ("DSM-5") "for several reasons, including its

conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See* Am.

---

[5] The previous edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) organized each psychiatric diagnosis into five levels relating to different aspects of the disorder or disability. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DMS-4") 27-33 (4th ed., text rev., 2000). Axis V was the Global Assessment of Functioning (the "GAF"), which reported the clinician's judgment of the individual's overall functioning. *Id* at 32-33. That multiaxial system and GAF scoring were omitted in the most edition of the DSM, "DSM-5."

Psychiatric Ass'n, Diagnostic and Stat. Manual of Mental Disorders 16 (5th ed. 2013). The

Social Security Administration released an Administrative Message AM-13066 ("the AM")

on July 22, 2013, which it revised on October 14, 2014, that "provides guidance to all State

and Federal adjudicators (including administrative law judges) on how to consider . . .

GAF[] ratings when assessing disability claims involving mental disorders." *Macias v.*

*Colvin*, No. 1:15-CV-00107-SKO, 2016 WL 1224067, at *8 (ED Cal Mar. 29, 2016), citing Doc.

18-1, p. 2.[6]  The AM emphasizes that "GAF ratings are not standardized," and that the

"GAF is neither standardized nor based on normative data . . . . [limiting] direct

comparability of GAF scores assigned by different evaluators." AM-13066, p. 2.

A GAF rating is still medical opinion evidence as defined in 20 CFR

§§ 404.1527(a)(2) and 416.927(a)(2) and should be considered by the ALJ when from an

acceptable medical source. Soc. Sec. Disab. Claims Handbook § 2:15 n40. However, its

reliability is dependent on "whether the GAF is consistent with the other evidence, the rater's

familiarity with the claimant, and the credentials of the rater." *Id.*  "Unless the clinician clearly

explains the reasons behind his or her GAF rating, and the period to which the rating applies, it

does not provide a reliable longitudinal picture of the claimant's mental functioning for a

disability analysis." *Macias v. Colvin*, No. 1:15-CV-00107-SKO, 2016 WL 1224067, at *8 (ED

Cal Mar. 29, 2016), citing AM-13066.  Essentially, a GAF is just a "snapshot" or rough estimate

of a claimant's presentation on the day of the examination. *Vargas v. Lambert*, 159 F3d 1161,

1164 n2 (9th Cir 1998).  Unless the medical evaluator explains what symptoms are emphasized

by the scores or what the score reflected in terms of functionality, the GAF scores are unreliable

---

[6] AM-13066 is only entitled to some deference to the extent it is persuasive, but it is not accorded the force of law. *Macias v. Colvin*, No. 1:15-CV-00107-SKO, 2016 WL 1224067, at *8 (ED Cal Mar. 29, 2016), citing *Skidmore v. Swift*, 323 US 134, 140 (1944).

sources of specific functional deficits.  *See id*, citing AM-13066 ("The GAF scale anchors are very general and there can be a significant variation in how clinicians rate a GAF. . . . Interpreting the GAF rating requires knowing what the clinician was focusing on when assigning the overall rating."); *Wills v. Colvin*, No. C15-1231-RSM, 2016 WL 1444729, at \*5 (WD Wash Apr. 13, 2016).

Drs. Cook and Kallemeyn did not explain the source of the GAF scores (61 and 55, respectively) they assigned to Lopez.  Generally, a GAF score of 51-60 indicates that the patient has "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DMS-4") 34 (4th ed., text rev., 2000).  A GAF score of 61-70 indicates some "mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.  *Id.*

On the day of both visits, Lopez appeared fairly stable.  Dr. Cook observed that Lopez had "turned a corner in her life."  Tr. 364.  He described her as lacking in subjective distress and fairly stable overall and concluded that the depression, anxiety, and posttraumatic stress from her past were not disruptive at that time such that she "fail[ed] to meet criteria for very much at all" which might have accounted for her GAF score.  Tr. 363-64.  Dr. Kallemeyn similarly noted that recent stimulant medication had been helpful and Lopez reported that she had no difficulty with job duties at a recent housekeeping job.  Tr. 341.

However, considering the GAF scores in isolation ignores substantial medical opinion evidence contained in those same psychological assessments.  According to Dr. Cook, Lopez demonstrated cognitive abilities in the below to average range and her working memory and calculation skills were observably difficult for her.  Tr. 359, 364.  He opined that she will have difficulties "taking in, processing, recalling, and utilizing information" and recommended that working settings "must present information slowly, in manageable chunks, with individualized instruction, and with time to reprocess the information via a question-and-answer to check her comprehension afterwards."  Tr. 364.

Dr. Cook noted that Lopez presented as stable in large part because of her circumstances at the time:  she was living with her husband of 2 years, who was "gainfully employed."  Tr. 363.  He warned that "the optimistic tone of the present evaluation [is] predicated upon Ms. Lopez being in a stable, nonviolent relationship, drug-free, and consistently involved with supporting treatment services designed to assist her and monitor her progress.  Should these things change, her prognosis would rapidly decline as well." Tr. 365.

During testing performed by Dr. Kallemeyn, Lopez performed "at the low end of the low average range on a test of attention/concentration, she had difficulty with a mental tracking task, and she had difficulty with abstractions."  *Id.*  Dr. Kallemeyn recommended that intellectual and achievement testing be completed for Lopez, suggesting that the GAF did not accurately describe her intellectual functioning.  Tr. 341.

Thus, the ALJ erred in relying on the GAF scores as contradictory evidence of Dr. Blount's opinion that Lopez had moderately severe to severe functional restrictions.  The GAF scores are not probative of her intellectual functioning as they are unexplained and the

opinions of Drs. Cook and Kallemeyn contain evidence of low levels of functionality. For these reasons, the ALJ failed to give any specific and legitimate reasons for rejecting Dr. Blount's opinion of Lopez's mental restrictions.

**B.     Dr. Stoltzfus (Examining Doctor)**

The ALJ also gave little weight to Dr. Stolzfus's opinion that the claimant's "prognosis is very poor" because it conflicted with objective evidence, Lopez's activities of daily living, and Dr. Stolzfus's own finding that her Wechsler Adult Intelligence Scale-III Edition score had increased from earlier testing. Tr. 25. Incongruity between a doctor's treatment notes and her opinion is a specific and legitimate reason for rejecting her opinion. *Tommasetti v. Astrue*, 533 F3d 1035, 1041 (9th Cir 2008).

In 2006 and 2007, Lopez's Full Scale IQ score was 76 and 72 respectively. Tr. 346. When Dr. Stolzfus re-administered the test in December 2007, Lopez scored 88, which Dr. Stolzfus concluded to be a significant improvement. *Id.* At the time of the evaluation, Dr. Stolzfus noted that Lopez was healthy, sleeping well, and her mood was "generally upbeat and positive." Tr. 344. She was completing her high school diploma through Chemeketa Community College and had not been on prescription medication for ADHD for a long time. *Id.*

Dr. Stolzfus's overall conclusion that Lopez's prognosis was "very poor" is entirely inconsistent with Lopez's improvement in objective testing and subjective description of her life at that time. For this reason, the ALJ did not err in the assessment of Dr. Stolzfus's opinion.

///

///

### C.   Dr. Suckow (Examining Doctor)

Finally, the ALJ rejected Dr. Suckow's opinion that Lopez's GAF is 53 on the basis that it is "inconsistent with the record." Tr. 26. As explained in detail above, unexplained GAF scores are unreliable comparators and therefore cannot be declared inconsistent with other objective evidence. In any event, a GAF score of 53 falls within the same range as previous scores that the ALJ credited, such as those assigned by Dr. Kallemeyn (55). *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DMS-4") 34 (4th ed., text rev., 2000) (the range of codes 51-60 represents "Moderate symptoms"). Thus, the ALJ erred in rejecting Dr. Suckow's opinion.

## II.   Depression

Lopez argues that the ALJ also erred by failing to discuss her depression at step two. "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F3d 683, 686 (9th Cir 2005), quoting *Smolen v. Chater*, 80 F3d 1273, 1290 (9th Cir 1996). Although the claimant bears the burden of establishing a medically determinable impairment, *see Bowen*, 482 US at 146, the inquiry at step two "is a *de minimis* screening device to dispose of groundless claims." *Smolen*, 80 F3d at 1290 (citation omitted). Thus, the reviewing court must "determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F3d at 687 (citation omitted).

The evidence before the ALJ relating to Lopez's depression meets the *de minimis* standard of severity at step two. In 2007, Dr. Kallemeyn, whose opinion received

significant weight from the ALJ (Tr. 25), diagnosed Lopez with depressive disorder. Tr. 342. In 2011, Dr. Cook, whose opinion the ALJ also assigned significant weight (Tr. 25), confirmed Dr. Kallemeyn's prior diagnosis, concluding that Lopez "[c]learly . . . suffered from depression, anxiety, and posttraumatic stress in the past." Tr. 360, 364. Even though Dr. Cook diagnosed Lopez's depression to be in remission, she warned that Lopez's psychic state was "very fragile" and concluded that Lopez would need "supervision and ongoing involvement for some time to come." Tr. 364. Dr. Cook predicted that if Lopez was not "consistently involved with supportive treatment services designed to assist her and monitor her progress, her prognosis would rapidly decline." Tr. 365. Also in 2011, reviewing doctor Megan D. Nicoloff, Psy.D., diagnosed Lopez with severe affective disorders. Tr. 71, 82. Finally, Dr. Blount, in a 2012 opinion not rejected by the ALJ opined that Lopez "definitely has chronic depression and does take antidepressant medication daily along with her ADHD needs." Tr. 766.

The Commissioner argues that the omitted discussion of Lopez's past diagnoses of depression was harmless error because the ALJ evaluated whether Lopez's impairments met Listing 12.04 at step three. Tr. 20. Listing 12.04 covers affective orders, including depressive syndrome. However, substantial evidence in the medical record establishes that Lopez's depression was a severe impairment. The ALJ did not incorporate symptoms of Lopez's depression into the RFC or in questions to the vocational expert.[7] Because it is not clear from the current record to what extent her depression would restrict her ability to perform the RFC, the error was not harmless.

---

[7] Lopez argues that the ALJ omitted from the RFC restrictions associated with her low tolerance of stress. According to Dr. Blount, Lopez has issues with "labile mood" that cause her to handle "stressful situations very poorly." Tr. 767. However, it appears the ALJ addressed that tendency by restricting Lopez to working in a small environment with no co-worker interaction. Tr. 21.

III.    **Credibility Determination**

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical evidence of one or more impairments and "show that the impairment or combination of impairments *could reasonably be expected* to [not that it did in fact] produce the pain or other symptoms alleged."  *Smolen*, 80 F3d at 1281-82.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptom.  To determine whether subjective testimony is credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id* at 1284 (citations omitted).

The following factors must also be considered:  the circumstances under which the claimant testified, any contradictions or corroborations, the claimant's prior work record, the nature of any symptoms and medical treatment, her daily activities, and any other factors concerning the claimant's functional limitations and restrictions.  20 CFR § 404.1529; SSR 96-7p, 1996 WL 374186, *3 (July 2, 1996).

If the ALJ finds the claimant's symptom testimony not to be credible, the ALJ "must specifically make findings which support this conclusion" and the findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit" it.  *Bunnell v. Smolen*, 947 F2d 341, 345-46 (9th Cir 1991) (*en banc*).  Absent evidence of malingering, the ALJ

may reject symptom evidence only by giving clear and convincing reasons, including which testimony is not credible and what facts in the record lead to that conclusion. *Reddick v. Chater*, 157 F3d 715, 722 (9th Cir 1998). With evidence of malingering, the ALJ must provide "specific, cogent reasons" for his disbelief. *Reddick*, 157 F3d at 722.

### A.   <u>Subjective Testimony</u>

Lopez testified at the hearing that she has difficulty maintaining her concentration and focus, especially when there is a lot going on in the room. Tr. 44. She cannot stay on task or complete assignments. *Id.* When asked to perform tasks at work, she becomes angry, frustrated, and may cry and walk away. Tr. 46. Spelling and mathematics are very difficult for her. Tr. 58. On some days she has difficulty getting out of bed due to her depression. Tr. 45. Lopez reports that mental health counseling did not help mitigate her symptoms. Tr. 55. She has help from her step-sister in caring for her children. Tr. 47. In Lopez's written function report, she added that she does not cook as much as she once did. Tr. 316. Because of back pain, she cannot lift more than 10 pounds or stand or walk for a long period of time. Tr. 321.

### B.   <u>Analysis</u>

The ALJ found that Lopez's testimony was not entirely credible for several reasons, some of which are arbitrary. However, the remaining reasons cited by the ALJ are clear and convincing and satisfy the standard of a non-arbitrary credibility finding.

The ALJ cited several inconsistencies between Lopez's testimony and her daily activity. Tr. 23. The ALJ questioned the extent of Lopez's depression in light of her successful ability to care for her infant; dress, bathe, and clean herself; prepare simple meals; perform household chores; run errands; and exercise daily. *Id.* Evidence of self-

care, however, does not eliminate the possibility that Lopez suffers from depression.  And Lopez also testified, which the ALJ failed to mention, that she receives substantial assistance with childcare and household chores from her step-sister who lives with her, her aunt, and the father of her two youngest children.  Tr. 47-49, 51-53, 57.

The ALJ also cited to parts of the record that undermined Lopez's testimony that she had trouble maintaining concentration and completing tasks, specifically her attendance at GED classes at Chemeketa Community College and ability to manage a savings account. Tr. 23.  The ALJ failed to recognize, however, that Lopez stopped attending her GED classes after only one month because "it got to the point where [she] couldn't understand it and [she] . . . wasn't getting the help that [she] needed."  Tr. 50.  Furthermore, there is substantial evidence in the record that Lopez has poor money-management skills and has over-drafted her savings account many times.

In finding Lopez lacked credibility, the ALJ specifically noted improvements in Lopez's symptoms of anxiety and depression with medication, citing a November 2010 visit with Dr. Blount.  Tr. 23, citing 376.  However, a notation during a single visit is insufficient evidence that Lopez's depression and anxiety has improved overall.  Although Lopez continued to report that her depression and anxiety was "fairly well controlled" (Tr. 691, 693, 723, 742), her mood swings continued to be uncontrolled even with medication. Throughout her treating records in 2011, she complained of irritability and labile mood. Tr. 674-750.

However, there is other objective evidence cited by the ALJ that does undermine Lopez's testimony.  For example, the ALJ noted an increase in Lopez's most recent IQ scores; an improvement of her depression and anxiety through treatment; an increase in her

energy level, motivation, and productivity; her overall ability to perform simple math calculations; and her ability to perform well on certain cognitive tests, such as reciting the alphabet and counting within certain time constraints.  *Id*.

The final and most convincing reason cited by the ALJ for discrediting Lopez's testimony is that Lopez has expressed a desire not to return to work.  During Lopez's 2010 examination with Dr. Cook, she stated that she preferred not to take a job in order to bond with her infant son.  Tr. 361-62.  While this is an understandable choice for a parent to make, this sentiment undermines Lopez's credibility in the context of her application for disability benefits.

Although some of the ALJ's reasoning for discrediting Lopez's testimony is unsupported, the remaining reasons are clear and convincing and satisfy the standard of a non-arbitrary credibility finding.

## IV.    Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir 2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F3d 1135, 1138 (9th Cir 2011).  The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act.  *Id*.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ failed to provide legally sufficient reasons for

rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id*, quoting *Benecke v. Barnhart*, 379 F3d 587, 590 (9th Cir 2004). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F3d 871, 876 (9th Cir 2003). The reviewing court declines to credit testimony when "an outstanding issue" remains. *Luna v. Astrue*, 623 F3d 1032, 1035 (9th Cir 2010).

As explained above, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Blount's opinions about the severity of Lopez's mental health limitations and Dr. Suckow's GAF score. The ALJ also erred in failing to include Lopez's depression as a severe impairment at steps two and four of the sequential analysis. Dr. Blount rated Lopez's functioning as moderately severe in the categories of maintaining attention and concentration for extended periods of time and maintaining regular attendance. Tr. 890. "Moderately severe" is defined as the ability "to perform designated task or function, but has or will have noticeable difficulty (distracted from job activity more than 20 percent of the work day or work week (*i.e.* more than 11/2 hours per day." *Id*. Dr. Blount, as an M.D., was qualified to opine on Lopez's mental health as it relates to her physical disability. *See Sprague v. Bowen*, 812 F2d 1226, 1232 (9th Cir 1987) (explaining why the psychiatric opinions of licensed physician are acceptable medical evidence). Had the ALJ accounted for Dr. Blount's full opinion, Lopez's RFC would have included limitations that the VE testified would preclude employment in any job in the national economy. Tr. 29-30.

Based on this finding, the record shows that properly crediting Dr. Blount's opinion requires a finding of disability.  The record in this case is fully developed and there are not outstanding issues to resolve.  When credited, Dr. Blount's opinion about the severity Lopez's functioning makes her unsuitable for competitive work during the disability period.

## <u>ORDER</u>

For the reasons discussed above, the Commissioner's decision is REVERSED and REMANDED pursuant to sentence four of 42 USC § 405(g) for an award of benefits.

DATED the 1st of August 2016.

s/Youlee Yim You
_____
Youlee Yim You
United States Magistrate Judge